# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**THE BULLARD BUILDING
CONDOMINIUM ASSOCIATION, INC.,**

      **Plaintiff,**

**v.**                                      **Case No.  8:08-cv-50-T-30MAP**

**TRAVELERS PROPERTY CASUALTY
COMPANY OF AMERICA,**

      **Defendant.**
_____/

## ORDER

THIS CAUSE comes before the Court upon Plaintiff's Motion for Reconsideration (Dkt. 36) regarding the Court's Order dismissing this case (Dkt. 34), Defendant's Responses to Same (Dkts. 39 and 45), and Defendant's Amended Motion to Dismiss Complaint for Bad Faith Refusal to Settle Insurance Claim (Dkt. 11).  The Court, having considered the motions, responses, the parties' arguments on same, and being otherwise fully advised in the premises, determines that the Court's Order dismissing this case (Dkt. 34) should be vacated and that, upon reconsideration, Defendant's Amended Motion to Dismiss Complaint for Bad Faith Refusal to Settle Insurance Claim (Dkt. 11) should be granted in part and denied in part.

## BACKGROUND

The Bullard Building is a business condominium owned and occupied by local businesses in Lake Wales, Florida, that collectively make up the The Bullard Condominium

Association, Inc. (the "Association" or "Plaintiff"). In August of 2004, the Bullard Building sustained damages when Hurricane Charley struck Lake Wales and the surrounding area. The instant action arises from Defendant Travelers Property Casualty Company of America's ("Travelers" or "Defendant") alleged bad faith refusal to settle the Association's insurance claims for damages to the Bullard Building.

Prior to the storm, the Association entered into a contract with Travelers for replacement cost property insurance, which included additional coverage for the building's awnings. The Association claims the building incurred the following damages as a result of the storm: awnings, windows and frames, roof skylight, roof, and walls. Moreover, the Association claims additional damage was caused to the interior of the building as a result of the breakages to the skylight and windows.

In order to mitigate damages, the Association sought bids to first repair the skylight, roof, and awnings. After receiving competitive bids, the Association voted to accept the lowest bids and move forward with the repairs.[1] The funds for the repairs were provided through a bridge loan from a member of the Association, which was to be repaid with the proceeds of a loan from the Small Business Administration.

On or about October 11, 2004, a member of Traveler's National Catastrophe Team inspected the property. In a letter addressed to the association following the inspection, the inspector estimated the replacement cost for all repairs to be $41,344.12. A check was issued

_____

[1]The Association claims the bids for these three items totaled $104,522.78.

by Travelers to the Association for $25,410.22, purportedly the replacement costs minus the applicable deductible and recoverable depreciation.

On or about March 14, 2005, a Property Claim Representative for Travelers met with members of the Association. During the meeting, the representative was presented copies of bills demonstrating deficiencies between the Traveler's initial estimate and the actual costs incurred. According to the Association, Travelers ultimately refused to reconsider its initial estimate.

In a letter dated April 28, 2005, addressed from the Association's attorney to Travelers, the attorney enclosed documentation of additional repair costs and indicated the Association was considering litigation. Ultimately, the Association filed suit on March 6, 2006, in the Circuit Court for Polk County, Florida (hereinafter "Bullard I"). After moving for a more definite statement, Travelers removed the action to federal court.[2] On July 31, 2006, the Honorable James D. Whittemore denied the motion for a more definite statement and ordered Travelers to answer the Complaint.

On September 26, 2006, Judge Whittemore granted a motion by Travelers to invoke an appraisal proceeding pursuant to the parties' insurance contract. In his Order invoking the appraisal proceeding, Judge Whittemore reasoned as follows:

> In Florida, appraisal clauses in insurance policies have generally been treated as arbitration provisions. *Three Palms Pointe, Inc. v. State Farm Fire and Cas. Co.*, 250 F. Supp. 2d 1357, 1362 (M.D.Fla. 2003); *Gray Mart, Inc. v. Fireman's Funds Ins. Co.*, 703 So. 2d 1170, 1178 (Fla. 3d DCA 1997). The

---

[2]See Case No. 8:06-cv-1194-T-27MSS.

right to an appraisal may be waived if a party maintains a position inconsistent with the appraisal remedy. *Id.; see also Raymond James Fin. Servs., Inc. v. Saldukas*, 896 So. 2d 707, 711 (Fla. 2005) (resolving circuit split and holding that a showing of prejudice is not required to find a waiver of an arbitration clause). Here, although Defendant could have invoked the appraisal process at an earlier time in the dispute, the appraisal clause does not require Defendant to invoke the appraisal process prior to suit or for that matter at any particular time. Defendant's conduct has not been shown to have been inconsistent with the appraisal remedy, at least to the extent of supporting waiver.

Judge Whittemore went on to hold that Travelers had "effectively made a prompt invocation of its appraisal rights under the policy" and ordered the parties to commence with the appraisal process. The <u>Bullard I</u> case was administratively closed pending the appraisal proceeding.

On November 2, 2006, after the appraisal process had been initiated, the Association filed a Civil Remedy Notice with the Florida Department of Insurance. On August 16, 2007, the umpire called upon to adjudicate the appraisal proceeding determined $178,676.00 was due to the Association under the policy. Travelers paid the Association the full amount of the award on September 17, 2007.

On November 28, 2007, the Association filed the instant action in the Circuit Court for Polk County, Florida ("<u>Bullard II</u>"). Travelers subsequently removed the action to this Court on January 10, 2008. On February 14, 2008, the Association filed a Dismissal With Prejudice of <u>Bullard I</u>. <u>See</u> <u>Bullard I</u> at Dkt. 16. The Dismissal recognized Travelers had paid the appraisal award in full, but went on to state:

> With regard to the attorney fees and costs issues, Plaintiff has filed a separate action against Travelers for bad faith refusal to settle the claim that was the

subject of this action. Plaintiff is including this action's claim for attorney fees and costs in the separate action for bad faith. Plaintiff cannot make the same claim for attorney fees in both actions.

Id. Judge Whittemore entered an Order dismissing Bullard I with prejudice on February 19, 2008.

Following dismissal of Bullard I, Travelers filed an Amended Motion to Dismiss in the instant action (Bullard II). Included among Travelers' grounds for dismissal was the claim that the Associations' bad faith claim is precluded by *res judicata* pursuant to the Eleventh Circuit's holding in Shulman v. Liberty Mutual Fire Insurance Co., No. 04-21137-CV-JLK, 2006 WL 952327 (11th Cir. April 13, 2006). On May 8, 2008, the Court heard oral argument from the parties regarding an apparent inconsistency between the Eleventh Circuit's holding in Shulman and the Florida Supreme Court's holding in Blanchard v. State Farm Mutual Automobile Insurance Company, 575 So. 2d 1289 (Fla. 1991).[3] At the close of oral argument, the Court asked the Association's counsel if it would consider moving to reopen Bullard I before Judge Whittemore.

The Association subsequently moved to reopen Bullard I. In its motion to reopen, the Association argued it was of the mistaken belief Bullard I had been closed when it filed Bullard II as a separate action. While the case had been administratively closed pending the appraisal, the Court did not officially close the case until after the dismissal was entered. Judge Whittemore rejected this argument, stating the Plaintiff disclosed "no efforts by which

---

[3]A discussion of these cases and the inconsistency will follow.

counsel attempted to clarify the status of [the] action and [failed] to explain why counsel dismissed with prejudice an action he believed was already closed." Bullard I at Dkt. 28, p. 2. In denying the motion to reopen, Judge Whittemore further considered that the Association "affirmatively sought to dismiss its own action on February 12, 2008 *after* receiving a draft motion to dismiss from Defendant on January 30, 2008, which outlined the very arguments now at issue in the bad faith action regarding attorney's fees and costs." Id.

Following Judge Whittemore's denial of the motion to reopen Bullard I, the Association moved to reopen this action.[4] Upon consideration, the Court reopened this action to consider Defendant's Amended Motion to Dismiss. On March 24, 2009, the Court entered an Order granting Defendant's Amended Motion to Dismiss (Dkt. 34). The Court held that, although Plaintiff's bad faith claim was not barred under the doctrine of *res judicata*, dismissal was appropriate because Defendant cured any bad faith violations within the statutory "cure" period provided under Fla. Stat. § 624.155.

On April 3, 2009, Plaintiff filed a Motion for Reconsideration (Dkt. 36). Plaintiff's Motion argued that the Court incorrectly applied the law when it held that Defendant had cured any alleged bad faith violations. Upon review of this issue, the Court agreed that, under Talat Enterprises, Inc. v. Aetna Casualty & Surety Co., 753 So. 2d 1278 (Fla. 2000), and additional Florida case law determining when the "cure" period runs under Fla. Stat. §

---

[4]The Court administratively closed this case pending Judge Whittemore's consideration of the motion to reopen Bullard I.

624.155, the Court had erroneously calculated the cure period.[5]  Accordingly, on May 15, 2009, the Court entered an Order holding that it would grant Plaintiff's Motion for Reconsideration and allow Defendant fifteen (15) days to fully brief the issue (Dkt. 40).

On June 10, 2009, Defendant filed its fully briefed Response in Opposition to the Motion for Reconsideration (Dkt. 45).  The Response requested the Court to consider all of the arguments Defendant raised in its Amended Motion to Dismiss.[6]  On June 28, 2009, the Court heard argument from the parties on these issues.  The Court, having reviewed all of the grounds for dismissal as set forth in Defendant's Amended Motion to Dismiss, and having considered the parties' arguments at the June 28, 2009 hearing, finds that the Court's Order dismissing this case should be vacated, dismissal should be granted in part and denied in part, and this case should be reopened.

## **DISCUSSION**

### I.    **Standard of Review**

To warrant dismissal of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, it must be "clear that no relief could be granted under any set of facts that could

---

[5] Plaintiff's Civil Remedy Notice ("CRN") was filed on November 2, 2006 and Defendant reimbursed Plaintiff after an adjudication of the appraisal proceeding on September 14, 2007, which is more than sixty (60) days after the date of the CRN.  The Court had erroneously calculated the cure period from the date of the adjudication of the appraisal proceeding, which occurred on August 16, 2007.  However, the adjudication of the appraisal proceeding determined when the bad faith claim was ripe, not when the cure period under Fla. Stat. § 624.155 began to run.

[6] In granting the Amended Motion to Dismiss, the Court discussed Defendant's arguments regarding *res judicata* and whether Defendant had cured the alleged bad faith.  Defendant's Amended Motion to Dismiss raised additional grounds as to why dismissal was appropriate.

be proved consistent with the allegations." Blackston v. State of Alabama, 30 F.3d 117, 120 (11th Cir. 1994), quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). Determining the propriety of granting a motion to dismiss requires courts to accept all the factual allegations in the complaint as true and to evaluate all inferences derived from those facts in the light most favorable to the plaintiff. See Hunnings v. Texaco, Inc., 29 F.3d 1480, 1483 (11th Cir. 1994). To survive a motion to dismiss, a plaintiff's complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1960 (2007). The threshold of sufficiency that a complaint must meet to survive a motion to dismiss is exceedingly low. See Ancata v. Prison Health Servs., Inc., 769 F.2d 700, 703 (11th Cir. 1985). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 127 S. Court. at 1959.

## II.      Defendant's Amended Motion to Dismiss

Defendant's Amended Motion to Dismiss makes the following arguments in support of dismissal of Plaintiff's complaint: (1) there is no legal right to recover attorneys' fees in this action related to a prior, separately filed lawsuit; (2) the complaint fails to state a cause of action for prejudgment interest; (3) the complaint fails to state a cause of action for costs; (4) the complaint is barred by *res judicata* and because it violates the rule against splitting causes of action; (5) Defendant is not required to pay "extra-contractual damages" to satisfy the 60 day cure requirement under Section 624.155; (6) the Civil Remedy Notice ("CRN")

is legally deficient requiring dismissal of the bad faith action; (7) Plaintiff failed to strictly comply with the notice requirements of Section 624.155; (8) and Plaintiff is not entitled to punitive damages. The Court will discuss each argument as set forth below.

A. **Defendant's argument that there is no legal right to recover attorneys' fees in this action that relate to a prior, separately filed lawsuit.**

Defendant argues that Plaintiff does not have the right to demand attorneys' fees in this case that relate to the attorneys' fees Plaintiff incurred in <u>Bullard I</u>. Defendant contends that Fla. Stat. § 627.428 makes it clear that fees are to be included in the judgment or decree of the case in which the fees relate, and that a judgment or decree was never entered in <u>Bullard I</u>. Defendant further argues that an award of fees would be inappropriate because Defendant promptly paid the appraisal award.

The Court agrees that Fla. Stat. § 627.428 indicates that the fees are to be included in the same case that the judgment or decree was entered. However, as Plaintiff's counsel stated during the hearing on July 28, 2009, Plaintiff can seek the fees from <u>Bullard I</u> pursuant to Fla. Stat. § 624.155. Specifically, Section 624.155(4) states "[u]pon adverse adjudication at trial or upon appeal, the authorized insurer shall be liable for damages, together with court costs and reasonable attorney's fees incurred by the plaintiff."

Although the Court cannot find a case that is similar to the facts of this case, where a Plaintiff opts to dismiss the first action prior to seeking the attorneys' fees incurred in that action and files a bad faith action in a separate case in which the fees from the first action are

sought, Florida case law implies that the fees incurred by a plaintiff can include the fees from the prior lawsuit.  In <u>McLeod v. Continental Insurance Co.</u>, the Florida Supreme Court held:

> Based on the above analysis, we hold that the damages recoverable in a first-party suit under section 624.155, Florida Statutes (1989), are those amounts which are the natural, proximate, probable, or direct consequence of the insurer's bad faith actions, and we reject the contention that first-party bad faith damages should be fixed at the amount of the excess judgment. The insurer in a first-party bad faith action is subject to a judgment in excess of policy limits if the actual damages resulting from the insurer's bad faith are found to exceed the policy limits. Such damages may include, but are not limited to, interest, court costs, and reasonable attorney's fees incurred by the plaintiffs. *The attorney's fees recoverable shall also include any fees incurred in the original underlying action as a result of the insurer's bad faith actions*. <u>See Howard v. Crawford & Co.</u>, 384 So. 2d 1326 (Fla. 1st DCA 1980); <u>see</u> <u>generally</u> 22 Am.Jur.2d Damages § 616 (1988).

591 So. 2d 621, 626 (Fla. 1992), holding superceded by statute as stated in <u>Time Ins. Co. v. Burger</u>, 712 So. 2d 389, 392 (Fla. 1998) (stating Fla Stat. § 627.727(10) overturned the holding of <u>McLeod</u> by authorizing the recovery of the "excess judgment" in first-party bad faith actions against uninsured motorist insurance carriers)).

The Court submits that this issue should be certified to the Florida Supreme Court to determine whether Florida law intended an insured to have such a remedy in a case like this, because, not only does Fla. Stat. § 627.428 specifically provide for a prevailing insured's attorneys' fees to be made a part of the judgment in the first action, it seems more appropriate for the Court presiding over the first action to determine the reasonableness of the fees incurred in that action.  Because Plaintiff opted to seek the fees from <u>Bullard I</u> in this action, the Court is faced with the potential dilemma of having to determine the reasonableness of fees that were incurred in a separate action in which the Court was not involved, although,

at this stage, it makes no determination as to whether Plaintiff will ultimately prevail on its request for fees. However, based on the Court's review of <u>McLeod</u> and Florida case law, the current state of the law in Florida allows recovery of the attorneys' fees from the first action in either the first action or the subsequent bad faith action. Accordingly, Defendant's motion to dismiss Plaintiff's claim for attorneys' fees incurred in <u>Bullard I</u> is denied.

Notably, Defendant distinguishes the facts of <u>McLeod</u>, but does not point to one case stating that the fees from the prior lawsuit cannot be sought in the bad faith action. Also, Plaintiff's dismissal with prejudice of <u>Bullard I</u> specifically noted that the dismissal was not with prejudice as to Plaintiff's right to pursue the fees incurred in the bad faith action. Thus, the dismissal with prejudice, standing alone, cannot bar Plaintiff's claim for those fees in this action. Moreover, because Plaintiff is seeking attorneys' fees from the prior lawsuit in this case under Fla. Stat. § 624.155, Fed. R. Civ. P. 54(d)(2) and Local Rule 4.18 are not relevant until Plaintiff receives a judgment against Defendant in <u>this</u> case.

Although Florida case law implies that Plaintiff can seek the fees from the prior lawsuit under Fla. Stat. § 624.155, the Court does not agree that fees are inappropriate under Section 627.428 because Defendant paid the appraisal award. Defendant relies on a number of cases to state this proposition,[7] however, those cases are factually distinguishable. In those

---

[7] <u>See</u> <u>Progressive Express Ins. Co. v. Weitz</u>, 218 Fed. Appx. 846 (11th Cir. 2007) (holding that an award of attorneys' fees was inappropriate because insurer stood ready to arbitrate, paid the arbitration award, and did not wrongfully withhold payment); <u>Federated Nat'l Ins. Co. v. Esposito</u>, 937 So. 2d 199 (Fla.4 th DCA 2006) (insurer timely paid the appraisal award without the need of court intervention); <u>Nowak v. Lexington Ins. Co.</u>, 464 F. Supp. 2d 1248 (S.D. Fla. 2006) (granting summary judgment in favor of insurer because insured's CRN was deficient); <u>Tristar Lodging, Inc. v. Arch Specialty Ins. Co.</u>, 434 F. Supp. 2d 1286 (M.D. Fla. 2006) (denying attorneys' fees because
(continued...)

cases, either litigation was not commenced until <u>after</u> the insurer paid the appraisal award or the court held, at the summary judgment stage, that the insurer did not wrongfully withhold payment of the insurance proceeds.  Here, it was not until after Plaintiff filed <u>Bullard I</u>, thus initiating a lawsuit, that Defendant moved to have the appraisal and ultimately paid the appraisal award.

These facts are similar to <u>Jerkins v. USF & G Specialty Insurance Co.</u>, 982 So. 2d 15 (Fla. 5th DCA 2008), <u>Goff v. State Farm Florida Insurance Co.</u>, 999 So. 2d 684 (Fla. 2d DCA 2008), and <u>Sands on the Ocean Condominium Ass'n, Inc. v. QBE Insurance Corp.</u>, No. 05-14362-CIV, 2009 WL 790120 (S.D. Fla. Mar. 24, 2009), where the courts held that an insured is entitled to the fees it incurred when the facts demonstrate that the insurer would not have paid the amount of the loss without judicial intervention.  Thus, depending on the underlying facts of the case, an appraisal award can be considered a judgment or decree for the purpose of awarding the insured's attorneys' fees.  Lastly, whether Defendant's actions in this case were an attempt to delay payment relates to whether Plaintiff can demonstrate bad faith, which is more appropriate at the summary judgment stage.

### B. Defendant's argument that the complaint fails to state a cause of action for prejudgment interest.

Defendant next argues that Plaintiff cannot seek prejudgment interest on the payments Defendant made on the insurance claim because Plaintiff was required to seek the prejudgment interest in <u>Bullard I</u> and Defendant paid the insurance claim in a timely manner

---

[7](...continued)
insurer did not wrongfully withhold payment).

pursuant to the terms of the insurance contract. The Court agrees that Plaintiff is precluded from seeking the prejudgment interest in this case. Plaintiff's dismissal of <u>Bullard I</u> with prejudice did not reserve Plaintiff's claim of prejudgment interest. Thus, the dismissal with prejudice precludes Plaintiff from seeking that item of damages in this case. Moreover, even assuming the dismissal with prejudice did not preclude such a claim in this case, the insurance policy[8] demonstrates that Defendant timely paid the appraisal award. Florida law is clear that entitlement to interest is determined by the contract language and the policy at issue in this case allows Defendant to withhold payment until thirty days following the date of the appraisal award. <u>See</u> <u>Liberty Mutual Ins. Co. v. Alvarez</u>, 785 So. 2d 700 (Fla. 3d DCA 2001); <u>316, Inc. v. Maryland Cas. Co.</u>, No. 3:07cv528/RS/MD, 2008 WL 3926863 (N.D. Fla. August 21, 2008). Defendant paid within this time period. Accordingly, Defendant's motion to dismiss Plaintiff's claim for prejudgment interest in this case is granted.

### C. Defendant's argument that the complaint fails to state a cause of action for costs.

Defendant contends that Fed. R. Civ. P. 54(d)(1) and Local Rule 4.18 do not allow Plaintiff to seek the costs it incurred in <u>Bullard I</u> in this action. As set forth herein, Plaintiff can attempt to recover the costs in <u>Bullard I</u> in this action under Fla. Stat. § 624.155 for the same reasons that it can recover the attorneys' fees from <u>Bullard I</u> in this action. Plaintiff's dismissal with prejudice reserved on the issue of costs. Assuming Plaintiff prevails on its

---

[8] On a motion to dismiss, the Court may consider any exhibits or attachments to the complaint and the insurance policy is attached to Plaintiff's complaint. <u>See</u> <u>Grossman v. Nationsbank, N.A.</u>, 225 F.3d 1228 (11th Cir. 2000).

bad faith claim, Plaintiff will have to comply with Fed. R. Civ. P. 54(d)(1) and Local Rule 4.18 at the time that such a judgment would be entered in its favor. Accordingly, Defendant's motion to dismiss Plaintiff's claim for costs is denied.

      **D.**    **Defendant's argument that the complaint is barred by *res judicata* and because it violates the rule against splitting causes of action.**

Defendant next argues that the Eleventh Circuit's decision in Shulman v. Liberty Mutual Fire Insurance Co., No. 04-21137-CV-JLK, 2006 WL 952327 (11th Cir. April 13, 2006), bars Plaintiff's separate bad faith lawsuit under the doctrine of *res judicata*. In Shulman, a plaintiff filed a breach of contract action against his insurance company arising from an alleged underpayment of a homeowner's water and mold damage insurance claim. Id. at *1. The insurance company did not dispute coverage of the claim, but instead the amount to be paid. Id. After the plaintiff accepted a settlement offer in the breach of contract action, the action was dismissed with prejudice. The plaintiff then filed a separate lawsuit for statutory bad faith under Florida law. Id. at *3.

The Shulman court cited Blanchard v. State Farm Mutual Automobile Ins. Co., 575 So. 2d 1289 (Fla. 1991), for the proposition that "a Florida statutory bad faith claim cannot be brought at the same time as a claim *disputing insurance coverage*," noting that Blanchard required a determination of the existence of liability as a prerequisite to filing a bad faith claim under Florida law. Id. The court distinguished an action in which coverage itself is disputed from one involving the amount to be paid under a policy. Id. The court determined the plaintiff's claim was ripe when he received the allegedly insufficient funds from the

insurance company because the plaintiff was aware of the facts underlying his bad faith claim at the time he filed the breach of contract action (and before he accepted the settlement offer and dismissed the case with prejudice).  Id. at *3-4.  Under these facts, the court held it was thus impermissible for him to split his causes action under the doctrine of *res judicata*.  Id. at *4.

In Blanchard, the Florida Supreme Court expressed its agreement with the reasoning of several Florida district courts of appeal that "the claim arising from bad faith is grounded upon a legal duty to act in good faith, and is thus separate and independent of the claim arising from the contractual obligation to perform."  Blanchard, 575 So. 2d at 1291.  The court rejected the contrary position expressed in Schimmel v. Aetna Casualty & Surety Co., 506 So. 2d 1162 (Fla. 3d DCA 1987), that "a claim for bad faith is indivisible from the underlying contractual cause of action and, accordingly, a plaintiff must join the two claims in one proceeding to avoid splitting the cause of action."  Id.  The Blanchard court held (i) Schimmel was erroneously decided, and (ii) "an insured's underlying first-party action for insurance benefits against the insurer necessarily must be resolved favorably to the insured before the cause of action for bad faith in settlement negotiations can accrue."  Id.

The Blanchard court thus recognized a bad faith action as a separate and independent claim.  It appears the Eleventh Circuit in Shulman may have misconstrued Blanchard by holding it was impermissible for the plaintiff to split his causes of action.  Given that the

<u>Shulman</u> case was not published, it is not binding upon this court.[9]  <u>Blanchard</u> makes it clear

that Plaintiff was not required to bring both claims in the same proceeding and, thus, its

independent bad faith claim is not barred under the doctrine of *res judicata* or the doctrine

of splitting causes of action.  See <u>also</u> <u>Dadeland Depot, Inc. v. St. Paul Fire and Marine Ins.</u>,

483 F.3d 1265 (11th Cir. 2007) (holding that insured was not barred from asserting separate

bad faith action against insurer despite the fact that insured could have brought bad faith

claim in its earlier arbitration proceeding).  In <u>Dadeland Depot</u>, the Eleventh Circuit noted:

> Because we were unclear as to the effect of the earlier arbitration on Dadeland's
> action (the insured), we certified the following question to the Florida Supreme Court:
> IS [THE] ARBITRATOR'S DECISION RES JUDICATA, THUS BARRING
> DADELAND'S LATER CLAIM AGAINST THE SURETIES FOR BAD-FAITH
> REFUSAL TO SETTLE?
>
> <u>Dadeland,</u> 383 F.3d at 1278.  The Florida Supreme Court answered that question in
> the negative.  It agreed with Dadeland that its current claim was separate and
> independent from any breach of contract claim that Dadeland might have asserted in
> the arbitration proceeding.

483 F.3d at 1271-72.  Accordingly, Defendant's argument that this case is barred by *res*

*judicata* and because it violates the rule against splitting causes of action must be denied.

**E.    Defendant's argument that Defendant is not required to pay "extra-contractual damages" to satisfy the 60 day cure requirement under Section 624.155.**

Defendant argues that it is not required to pay "extra-contractual damages" to satisfy

the sixty (60) day cure requirement under Section 624.155.  Plaintiff filed the instant action

---

[9]The Eleventh Circuit's Rule 36-2 provides "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority."

pursuant to Fla. Stat. § 624.155, which provides a cause of action against an insurer that fails to attempt "in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests."  Fla. Stat. § 624.155(2).  As a condition precedent for filing a claim for this cause of action, Section 624.155(3)(a) requires that the insurer be provided sixty (60) days' written notice of the violation.  The statute further provides that "[n]o action shall lie if, within 60 days after filing notice, the damages are paid or the circumstances giving rise to the violation are corrected."  Fla. Stat. § 624.155(2)(d).

In Talat Enterprises, Inc. v. Aetna Casualty & Surety Co., 753 So. 2d 1278, 1284 (Fla. 2000), the Florida Supreme Court held that "in creating this statutory remedy for bad faith actions, the [Florida] Legislature provided this sixty day window as a last opportunity for insurers to comply with their claim-handling obligations when a good-faith decision by the insurer would indicate that contractual benefits are owed."  The court reasoned Section 624.155 "cannot reasonably be construed to require payment of extra-contractual damages to avoid bad-faith litigation until the conditions for payment under the policy have been fulfilled and the insurer has failed to cure within the sixty-day statutory period for cure after notice is filed in accord with the statute."  Id. at 1283.  Moreover, the court discussed "[i]f the insurer pays the damages during the cure period, then there is no remedy," and that "[t]he statutory cause of action for extra-contractual damages simply never comes into existence until expiration of the sixty-day window without the payment of the damages owed under the contract."  Id. at 1283-84.

Here, Plaintiff filed its Civil Remedy Notice on November 2, 2006, after the appraisal proceeding had been initiated but before it concluded. Defendant reimbursed Plaintiff after an adjudication of the appraisal proceeding on September 14, 2007, which is more than sixty days after the date of the CRN. Thus, Defendant did not pay the damages during the cure period. Defendant seems to rely on <u>Talat</u> to argue that it was not required to pay "extra-contractual damages." This is correct, however, Defendant did not pay the insurance proceeds Plaintiff was entitled to during the sixty day period. The facts in <u>Talat</u> are distinguishable. In <u>Talat</u>, the insurer paid the insurance proceeds during the sixty day period, but failed to pay "extra-contractual damages," such as attorneys' fees and costs. The Court held that because the insurance proceeds were paid during the 60 day period, the insurer had cured any alleged bad faith. Thus, Defendant's reliance on <u>Talat</u> is misplaced and Defendant's argument that it met the cure requirement under Section 624.155 is denied.[10]

**F.** **Defendant's argument that the CRN is legally deficient requiring dismissal of the bad faith action.**

Defendant argues that the CRN and Plaintiff's complaint fail to place Defendant on notice as to the basis of Plaintiff's cause of action for bad faith. Defendant seems to argue the merits of the allegations contained within the complaint and suggests that Defendant paid any damages owed to Plaintiff in a timely manner. At the motion to dismiss stage, however, the Court must assume the truth of the allegations of the complaint. The Court finds that the

---

[10] Defendant notes in this section of its argument that it is not responsible for the costs of the appraiser and/or umpire. This argument is not fully briefed and is more appropriate at the summary judgment stage.

allegations, and attachments thereto, are sufficient to allege a bad faith claim against Defendant. Moreover, the CRN delineates a myriad of reasons as to why Plaintiff believes Defendant's actions constitute bad faith.

Defendant also argues that it paid the remaining claims within the statutory cure period, however, the Court, as set forth herein, finds that the claims were not paid within the cure period. Defendant relies on Longpoint Condominium Ass'n v. Allstate Insurance Co., 2005 WL 1315810 (N.D. Fla. June 2, 2005), to argue the merits of Plaintiff's bad faith claim, which is also inappropriate at the motion to dismiss stage. During the hearing on July 28, 2009, Defendant's counsel stated that 316, Inc. stood for the proposition that Plaintiff could not prove that Defendant acted in bad faith as a matter of law. The Court finds the facts of Longpoint and 316, Inc. distinguishable from the facts of this case. However, as these are summary judgment cases, Defendant's arguments are denied without prejudice to Defendant to re-raise these issues regarding whether Plaintiff can prove a bad faith action, as a matter of law, at the summary judgment stage.

**G.    Defendant's argument that Plaintiff failed to strictly comply with the notice requirements of Section 624.155.**

Defendant argues that the CRN lacks any details concerning Plaintiff's allegations of bad faith and does not provide any dollar amounts allegedly owed on the claim. The Court disagrees that the CRN is deficient. Fla. Stat. § 624.155(3)(b) does not require an insured to indicate the amount owed. See also Tropical Paradise Resorts, LLC v. Clarendon Am. Ins. Co., No. 08-60254-CIV, 2008 WL 3889577 (S.D. Fla. Aug. 20, 2008). It was also

unnecessary for Plaintiff to reference specific policy language.  Id. at *4.  Accordingly, Defendant's motion to dismiss Plaintiff's complaint based on the adequacy of the CRN is denied.

**H.      Defendant's argument that Plaintiff is not entitled to punitive damages.**

Defendant argues that Plaintiff's request in paragraph 32 of the complaint attempts to state a cause of action for punitive damages and moves to strike such a claim because it does not comply with Section 624.155.  As stated on the record at the hearing on July 28, 2009, the Court agrees that any claim for punitive damages at this stage in the proceedings is premature.  Thus, Plaintiff's request for punitive damages in its complaint is stricken, without prejudice for Plaintiff to seek punitive damages at a later date.

## CONCLUSION

For the reasons set forth herein, it is therefore ORDERED AND ADJUDGED that:

1.      The Court's Order dismissing this case (Dkt. 34) is hereby **VACATED**.

2.      Upon reconsideration of Defendant's Amended Motion to Dismiss (Dkt. 11), the Amended Motion (Dkt. 11) is hereby **GRANTED IN PART AND DENIED IN PART**.

3.      The Amended Motion is **GRANTED** to the extent that Plaintiff's claim for prejudgment interest in the complaint shall be **DISMISSED with prejudice.**

4.      The Amended Motion is **GRANTED** to the extent that Plaintiff's claim for punitive damages in the complaint shall be **STRICKEN** without prejudice to assert such damages at a later date.

5.     All remaining arguments contained within the Amended Motion are hereby

**DENIED**.

6.     The CLERK is directed to **REOPEN** this case.

7.     The parties shall file a revised Case Management Report within thirty (30) days

from the date of this Order.

**DONE** and **ORDERED** in Tampa, Florida on August 4, 2009.


JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

<u>**Copies furnished to:**</u>
Counsel/Parties of Record

S:\Even\2008\08-cv-50.vacate and dismiss in part.wpd